IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

SCOTT BLACKMON,                     *

    Plaintiff,                  *

vs.                                 *        CASE NO. 4:13-CV-179 (CDL)

STEWART COUNTY SCHOOL DISTRICT      *
and FLOYD FORT,
                                    *
    Defendants.
_____     *

O R D E R

    Plaintiff Scott Blackmon was a physical education teacher for Defendant Stewart County School District.   In 2010, the School District faced a budget crisis.   The superintendent, Defendant Floyd Fort, recommended that the School District eliminate several positions, including one of the School District's two physical education teacher positions.   Fort suggested that Blackmon's position be eliminated because Blackmon had no coaching or other extracurricular duties while the School District's other physical education teacher was the head coach of the football and baseball teams.   The School Board agreed and eliminated Blackmon's position.   Blackmon, who is white, contends that the School Board terminated him because of his race.   Presently pending before the Court is Defendants' summary judgment motion (ECF No. 14).   For the reasons set forth below, the motion is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

The evidence viewed in the light most favorable to Blackmon reveals the following.

Blackmon, who is white, began working for the School District as a health and physical education teacher in 2005.  He also served as the School District's head football coach.  In 2007, Blackmon became the high school athletic director.  But the School District soon became dissatisfied with Blackmon's performance as athletic director and wanted to improve the image of its athletic department "within the school, within the community, in the region and the state."  Fort Dep. 37:11-15,

ECF No. 27-2.   Superintendent Fort, who is white, also had concerns about Blackmon because of an incident with the high school basketball coach, but Blackmon contends that there is a fact dispute on this point.   According to Fort, Blackmon attempted to fire the high school basketball coach after Fort told Blackmon that he was not "going to do anything about removing that coach."   Fort Dep. 37:15-20.   Blackmon contends in his brief that Fort actually urged Blackmon to fire the basketball coach, but Blackmon admitted in his deposition that he had no authority to do so.   Blackmon Dep. 119:20-120:5, ECF No. 19.

When the School District hired John Hamilton to be the new high school principal in 2009, Fort removed Blackmon from the high school athletic director position and appointed Hamilton, who is black, as athletic director.   Then, Hamilton decided that Blackmon should no longer be head football coach.   Fort agreed, in part because the football team only won a total of one game during the three prior seasons with Blackmon at the helm. Hamilton had previously served as an assistant football coach under Blackmon, and he believed that the team's failures were due to inadequate conditioning and poor work ethic under Blackmon's leadership.   The School District hired Travis Terry, who is black, to fill a vacant physical education teaching

position in July 2009.  The School District also appointed Terry to be head football coach and head baseball coach.

In addition to the coaching issues, Blackmon narrowly avoided losing his teaching certification after twice failing a computer competency test in 2009.  When Fort attempted to verify that Blackmon's teaching certificate had been renewed, the online system showed that Blackmon's teaching certificate had *not* been renewed.  Fort Aff. ¶ 8, ECF No. 14-3; Blackmon Dep. 54:6-55:7 (acknowledging two failed attempts of computer competency test).  Blackmon completed the computer requirement after taking a course at Columbus State University, but Blackmon's online certification status stated that Blackmon's certification had expired.  Fort Aff. ¶ 8.  Fort called Blackmon into his office to discuss the teaching certificate, and Blackmon telephoned a representative of the Georgia Professional Standards Commission, who verified that Blackmon's teaching certificate had been renewed.  With his certificate renewed, Blackmon was eligible to continue his teaching job.

In 2009, the Georgia General Assembly reduced state funding for Georgia schools, including the School District.  In response to the funding cuts, the School District implemented budget cuts and also eliminated 6.5 positions for the 2009-2010 school year. The School District faced significant additional funding cuts for the 2010-2011 school year.  Fort began to look at which

positions could be eliminated to balance the budget for the 2010-2011 school year.  When he started developing the reduction-in-force for the 2010-2011 school year, Fort looked "for positions and programs to eliminate that would cause the least harm to the instructional program in the schools."[1]  Fort Aff. ¶ 16.

Fort recommended eliminating five positions.  One of those five positions was a system-wide physical education teacher position; the state funded only "0.88 total positions for P.E., Art, and Music for the entire District" for the 2010-2011 school year, and the School District had two physical education teachers.  *Id.* ¶ 19.  Terry taught physical education at the elementary school, and Blackmon taught physical education at the high school.  Fort determined that regular classroom teachers could teach physical education to the elementary students, so the remaining physical education teacher would teach middle school and high school students.  *Id.* ¶ 19.

Fort had to choose which of the School District's two physical education teachers to retain.  He could choose either Terry, the head football coach and head baseball coach who

---

[1] Blackmon "does not agree with" several of Defendants' fact statements, but he did not point to any evidence to refute them as the local rules required him to do.  Pl.'s Resp. to Defs.' Statement of Material Undisputed Facts 2, ECF No. 25; *see* M.D. Ga. R. 56 ("All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.").

received an overall satisfactory annual evaluation in 2009-2010 and earned "meets expectations" ratings on his two formal observations.  Or he could choose Blackmon, who no longer had any coaching or other extracurricular duties and who received several "needs improvement" ratings on his formal observations in 2009 and 2010.  Blackmon Dep. Ex. D-6, Observation Record, Apr. 14, 2009, ECF No. 19 at 199 (observing that "the teacher was seated at the front of the gym and remained seated throughout the observation" and that several students "talked in two groups as opposed to participating in the basketball game"); Blackmon Dep. Ex. D-8, Observation Record, Mar. 16, 2010, ECF No. 19 at 201 ("[T]here was no positive or negative feedback from the teacher.").

Fort decided to keep Terry because Fort did not want to disrupt the progress Terry was making with the football and baseball teams and because Fort did not believe that Blackmon should be reassigned as head football coach given his lack of success with the program.  Fort Aff. ¶¶ 20-21.  Without Terry, the School District "would have had the added burden of finding new head coaches for both football and baseball."  *Id.* ¶ 20.

The School Board unanimously approved the reduction-in-force plan on May 11, 2010, and Blackmon was notified that his contract would not be renewed.  At the time, there were three open teaching positions, including a social studies teaching

position.   Blackmon did not apply for any of the open positions. Blackmon was not certified to teach social studies in 2010, but he had taught social studies in the past and believes that he could have become recertified.   There is no evidence that Fort knew that Blackmon was certified in any subject other than health and physical education.

Blackmon argues that Viola Fedd, the middle school principal and the curriculum director of grades 6-12, had a racially motivated vendetta against Blackmon.   According to Blackmon, Fedd repeatedly approached Hamilton's predecessors and told them that "a white man wouldn't be good for the kids out there and a black man needed to have [the athletic director] position."   Davis Dep. 22:13-17, ECF No. 20.   But Blackmon did not point to any evidence that Fedd was involved in or influenced Fort's decisions regarding Blackmon.

DISCUSSION

Blackmon contends that Fort and the School District terminated him because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).[2] Blackmon did not point to any direct evidence of racial discrimination, so he must proceed under the familiar three-step framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S.

_____

[2] Blackmon also originally brought claims for age discrimination, but he now concedes that he has no claim for age discrimination.

792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) for employment discrimination claims based on circumstantial evidence. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). First, the plaintiff must establish a prima facie case of discrimination. *Id.* If the plaintiff establishes a prima facie case, then the employer may articulate a legitimate non-discriminatory reason for its action. *Id.* And if the employer articulates a legitimate non-discriminatory reason, then the plaintiff must "produce evidence that the employer's proffered reasons are a pretext for discrimination." *Id.*

In a typical reduction in force case, the plaintiff may establish a prima facie case of discrimination by showing "(1) that he was in a protected class," (2) that he was terminated as part of a reduction in force, (3) "that he was qualified for his current position or to assume another position at the time of discharge," and (4) "evidence by which a fact finder could reasonably conclude that the employer intended to discriminate in reaching that decision." *Padilla v. N. Broward Hosp. Dist.*, 270 F. App'x 966, 971 (11th Cir. 2008) (per curiam) (internal quotation marks omitted); *accord Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998). But this is not a typical reduction in force case. Viewed in the light most favorable to Blackmon, the School District eliminated the

elementary school physical education teaching position and kept the middle and high school physical education teaching position. And the School District terminated Blackmon, its middle and high school physical education teacher, and moved Terry into that position. There is no question that Blackmon was a member of a protected class who was qualified for his physical education teaching position. Under these facts, the Court is satisfied for purposes of summary judgment that Blackmon has established a prima facie case of race discrimination.

The School District proffered a legitimate nondiscriminatory reason for its decision: due to budget cuts, the School District could only keep one physical education teacher. And in determining which physical education teacher to keep, the School District decided to retain the physical education teacher who was also head coach of the football and baseball teams.

To show pretext, Blackmon "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez*, 610 F.3d at 1265 (internal quotation marks omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [he] cannot

succeed by simply quarreling with the wisdom of that reason." *Id.* at 1265-66 (internal quotation marks omitted).

Blackmon appears to acknowledge that the School District was perfectly justified in keeping the physical education teacher who also had coaching responsibilities. But Blackmon argues that he never should have been removed as athletic director or head football coach. Pretermitting the question whether Blackmon can raise these issues now (even though he apparently did not formally challenge these employment actions when they occurred in 2009), Blackmon cannot prevail because he pointed to no evidence that his removal from either position was racially motivated.

The School District established, and Blackmon did not rebut, that Blackmon was removed from the athletic director position in part because the School District wanted to improve the athletic department's image.[3]   The School District established, and Blackmon did not rebut, that Blackmon was removed from the head football coach position because of his team's dismal record during the previous three seasons. Based on this evidence, the School District was reasonable in

---

[3] Blackmon argues that Fort lied about one of the proffered reasons for removing Blackmon from the athletic director position—the basketball coach incident. Even if the Court accepted Blackmon's argument on this point and discounted Blackmon's own testimony that Blackmon had no authority to fire the basketball coach, there is still no evidence that unlawful discrimination was the true reason for Blackmon's removal from the athletic director position.

stripping Blackmon of his football coaching responsibilities. Given that Blackmon lacked coaching responsibilities, it was rational for the School District to terminate him instead of Terry, who was the head coach of two teams. Blackmon cannot quarrel with the wisdom of this legitimate nondiscriminatory reason. *Cf. Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (noting, in the context of a failure-to-promote case, that "a plaintiff must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff" (internal quotation marks omitted)).

Blackmon seems to contend that he can establish intentional discrimination in three other ways. First, Blackmon argues that Fort was out to get him as evidenced by the 2009 teaching certificate incident. Fort believed that Blackmon's teaching certificate had expired because Blackmon failed a computer competency test at least twice. When Fort called Blackmon into his office to discuss the teaching certificate, Blackmon telephoned a representative of the Georgia Professional Standards Commission, who verified that Blackmon's teaching certificate had been renewed. Fort did not take any adverse action against Blackmon based on the teaching certificate

incident.     Nothing   about   this   episode   establishes   any
discriminatory intent on Fort's part.

Second, Blackmon pointed to evidence that Viola Fedd, the
middle school principal and curriculum director of grades 6-12,
had   racial   animus   toward   him.     But   "remarks   by   non-
decisionmakers   or   remarks   unrelated   to   the   decisionmaking
process   itself   are   not   direct   evidence   of   discrimination."
*Standard*, 161 F.3d at 1330.   Blackmon did not point to any
evidence that Fedd influenced or was involved in any of the
challenged   employment   decisions.     Rather,   the   undisputed
evidence is that Fort made the reduction-in-force recommendation
alone and that Fedd was not involved in the reduction-in-force
decision.   Fort Aff. ¶¶ 16, 29-30.

Finally, Blackmon argues that he should have been offered a
social studies teaching position.   But it is undisputed that (1)
Blackmon did not apply for a social studies teaching position
and (2) Blackmon was not certified to teach social studies in
Georgia.   Though Blackmon now contends that he could have become
certified to teach social studies, there is no evidence in the
present record that Fort was aware that Blackmon might be (or
become) eligible to teach social studies.

For all of these reasons, the Court concludes that Blackmon
failed to point to sufficient evidence to demonstrate genuine

factual disputes regarding his employment discrimination claims. Defendants are thus entitled to summary judgment.

CONCLUSION

As discussed above, Defendants' Motion for Summary Judgment (ECF No. 14) is granted.


IT IS SO ORDERED, this 4th day of June, 2014.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE